IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Case No. 4:14-CV-187-F

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>B&G FITNESS CENTER, INC. and<br>THOMAS G. OWENS<br><br>Defendants. | **RESPONSE TO DEFENDANT'S<br>CROSS MOTION FOR<br>SUMMARY JUDGMENT** |

COMES NOW, Plaintiff Scottsdale Insurance Company ("Scottsdale"), by and through counsel, and, in accordance with Local Civil Rules 7.1, 7.2, and 56.1, submits this Response to Defendant B&G Fitness Center, Inc.'s ("B&G") Cross Motion for Summary Judgment.[1]

In short, B&G's Memorandum in Support of B&G's Cross Motion for Summary Judgment (hereinafter the "B&G Memorandum") raises no issue or argument that prevents or precludes this Court from granting the summary declaratory judgment Scottsdale requests. Moreover, B&G has not presented any persuasive argument in support of its Cross Motion for Summary Judgment. Rather, B&G's Memorandum is riddled with misleading and irrelevant citations to factually distinct and non-binding case law, all in an apparent attempt to overcome binding precedent from this very Court directly on point with the legal issues central to this case.

As a preliminary matter, Scottsdale respectfully advises the Court that the parties in the Pool Lawsuit reached an agreement in principle to amicably resolve the case shortly before the B&G Memorandum was filed. Accordingly, there is no active case or controversy between

---

[1] B&G's Memorandum of Law in Support of its Motion for Summary Judgment also included a Response to Scottsdale's Motion for Summary Judgment, which Scottsdale previously opposed as being untimely. (D.E. 36.) After consulting with counsel for B&G, Scottsdale hereby withdraws its argument that B&G's Response was untimely and should not be considered by the Court.

1

Scottsdale and B&G regarding the Pool Lawsuit, and its allegations are no longer relevant to the instant motions. *See Clipper v. Takoma Park, Md.*, 898 F.2d 18, 19 (4th Cir. 1989) ("If the parties settle the cause of action underling a dispute, the action is moot.") (citing *Buck's Stove & Range Co. v. Am. Fed'n of Labor*, 219 U.S. 581 (1911)). Notwithstanding the agreement to settle the Pool Lawsuit, there remains an active case or controversy between Scottsdale and B&G with regard to coverage for the Crews Lawsuit. At this juncture, however, the only relevant allegations for purposes of determining coverage under the Policy arise only from the single count of negligence in the Crews Lawsuit; the allegations in the Pool Lawsuit are no longer pertinent.

## I. The Allegations in the Crews Lawsuit Plainly Implicate the Sexual and/or Physical Abuse Exclusion

In considering whether there is coverage for this sole negligence claim asserted in the Crews Lawsuit, the Court must look beyond how the claim is labeled to the actual substantive allegations of the underlying complaint. *See Jarborough v. Attorney Gen. of U.S.*, 483 F.3d 184, 189 (3d Cir. 2007) ("We are not bound by the label attached by a party to characterize a claim and will look beyond the label to analyze the substance of a claim. To do otherwise would elevate form over substance and would put a premium on artful labeling."). In this regard, the actual facts alleged in the Crews Complaint (in short, a wayward tanning salon employee preying on unsuspecting customers) must be viewed as mental abuse, precluding coverage under the Policy.

The Policy is subject to the Sexual and/or Physical Abuse Exclusion ("SPAE"), which excludes coverage for any injury "arising out of or resulting from Sexual and/or Physical Abuse" by an insured, an employee, or any other person. For purposes of the SPAE, "Sexual and/or Physical Abuse" includes, but is not limited to, "assault and battery, negligent or deliberate

touching, corporal punishment and <u>mental abuse</u>."  (D.E. 10, Ex. A, Form GLS-45s (8-04)) (emphasis added.)  As argued in Scottsdale's Motion for Summary Judgment and Memorandum of Law in support of its Motion for Summary Judgment (both of which are hereby incorporated by reference), even under the most narrow construction of the terms of the SPAE, the claims alleged by the plaintiffs in the Crews Lawsuit are the textbook definition of "mental abuse," such that they fall within the Policy's definition of "Sexual and/or Physical Abuse."  (D.E. 33 at 5-9.) Notwithstanding that the claims asserted in the underlying lawsuit fall squarely within the ambit of the SPAE, B&G asserts several arguments in a strained effort to create coverage that the parties expressly excluded through the SPAE.  Each of these arguments falls flat, as discussed further herein.

First, in an attempt to convince this Court to turn its back on well-established authority from this jurisdiction, B&G first argues that the injury in this case "arises out of" B&G's negligence, not Owens' abuse.  As discussed in Scottsdale's Memorandum of Law in Support of its Motion for Summary Judgment (D.E. 33 at 8-9), this contrived reading of the term "arising out of" has been repeatedly rejected by this Court, as well as sister courts.  In *Allstate Insurance Co. v. Bates*, for example, this Court considered an analogous sexual molestation exclusion and defendant's argument that the physical, emotional, and psychological damage suffered by the victim "arose, not from the sexual molestation, but from the defendant's alleged negligence in protecting [the victim] from the molestation."  185 F. Supp. 2d 607, 612 (E.D.N.C. 2000).  The *Allstate* court squarely rejected this argument, noting that "the illogic of such an assertion would seem to be apparent."  *Id.*  Rather, the Court found that the "sexual molestation…is not 'incidental' to the negligence claim…it is, in fact, the motivating factor for such a claim. Without the molestation there would be no injury and thus, no basis for the negligence claim."

3

*Id.* at 613; *see also Scottsdale Ins. Co. v. Children's Home Soc. of N. Carolina, Inc.*, No. 5:12-CV-81-FL, 2013 WL 3354506, at *8 (E.D.N.C. July 3, 2013) *aff'd*, 581 F. App'x 290 (4th Cir. 2014) (holding that because it was "clear that the alleged harm to Sean Paddock is alleged to have arisen from physical abuse by the Paddocks, not from CHSNC's negligence," the SPAE applied to bar coverage); *Erie Ins. Exch. v. First United Methodist Church*, 690 F. Supp. 2d 410, 415 (W.D.N.C. 2010) (abuse and molestation exclusion applied to "the injury at issue, not the pleaded cause of action," and thus negligent supervision claims were excluded) (citing *Bates*, 185 F. Supp. 2d at 613). Here, too, it is clear that the injuries suffered by the Crews plaintiffs principally arose out of Owens' clandestine recording, not B&G's negligence. But for Owens' abuse, the Crews plaintiffs would not have suffered any injury, eliminating any basis for a negligence claim against B&G. *See Little v. Omega Meats, Inc.*, 171 N.C. App. 583, 586, 615 S.E.2d 45, 48 (2005), *aff'd* 360 N.C. 164, 622 S.E.2d 494 (2005) (defining the elements of a negligence claim as "the existence of a legal duty or obligation, breach of that duty, proximate cause and <u>actual loss or damage</u>." (emphasis added)). The SPAE thus applies to preclude coverage, notwithstanding the fact that the Crews plaintiffs have painted their claims in terms of negligence.

Moreover, B&G's position contradicts the explicitly stated intent of the SPAE, namely, to "exclude all injury…including but not limited to 'Sexual and/or Physical abuse' <u>caused by negligent employment, investigation, supervision…or retention</u> of a person for whom any insured is or ever was legally responsible." (D.E. 10, Ex. A, Form GLS-45s (8-04)) (emphasis added.) Even without the authority directly on point from this Court and its sister courts, based on this explicit policy language, the only plausible reading of the SPAE is that the allegations in

4
PD.18305470.3
Case 4:14-cv-00187-D   Document 38   Filed 11/16/15   Page 4 of 19

the Crews Lawsuit against B&G are excluded from the Policy's coverage, notwithstanding that they are couched in a negligence claim.

B&G's repeated contention that Owens' "Peeping Tom"-like acts represent an "invasion of privacy" is also misplaced and irrelevant. Regardless of whether Owens' actions constitute an invasion of privacy, they are "mental abuse." The two are not mutually exclusive. On this point, B&G cites to several cases purportedly holding that similar "Peeping Tom"-like acts were "*an invasion of privacy*, not mental abuse." (D.E. 35 at 22 (citing *Lineberry v. State Farm Fire & Cas. Co.*, 885 F. Supp. 1095 (M.D. Tenn. 1995); *Am. Guarantee & Liability Ins. Co. v. 1906 Co.*, 273 F.3d 605 (5th Cir. 2001))) (emphasis in original). These cases, however, are inapposite. *Lineberry* and *American Guarantee* did not hold, as B&G contends, that similar "peeping" actions could not also constitute "mental abuse" under the SPAE. Indeed, those cases did not involve a SPAE (or any other sort of exclusion for "mental abuse") at all, and thus have no bearing on the case at hand. B&G has not cited (and cannot cite) any cases that preclude Owens' actions from being classified as "mental abuse" for purposes of the SPAE. In fact, other courts have specifically found that invasion of privacy claims constituted "mental abuse." *See Heacker v. Safeco Ins. Co. of Am.*, 676 F.3d 724, 729 (8th Cir. 2012) (holding that "[a]ll of the acts" alleged in the complaint, including "invasions of privacy," fell within the definition of "mental abuse"); *Miller v. McClure*, 742 A.2d 564, 571 (N.J. Super. Ct. 1998), *aff'd* 745 A.2d 1162, 162 N.J. 575 (1999) (holding that allegations for "invasion of privacy" constituted "mental abuse" excluded by insurance policy). Thus, B&G's assertion that this matter involves an "invasion of privacy" (and not also "mental abuse") is unpersuasive.

Moreover, the SPAE is not limited to physical and sexual abuse and other forms of abuse flowing therefrom, as argued by B&G. B&G generally asserts that since the Crews Lawsuit does

not allege physical or sexual assault, it cannot allege mental abuse. (D.E. 35 at 18-19.) This Court in *Children's Home Society of North Carolina*, however, expressly held that "[t]he language of the definition in the SPAE purports to exclude 'mental abuse,' not 'mental abuse flowing from sexual or physical abuse.' Thus, the SPAE excludes damages arising out of the injuries suffered … due to <u>non-contact emotional and verbal abuse</u>." 2013 WL 3354506, at *9 (emphasis added). Notwithstanding B&G's efforts to ascribe a more narrow reading to the term, "sexual and/or physical abuse" is given a special definition by the Policy. In this regard, it is axiomatic that, "[w]here a policy defines a term, that definition is to be used." *C.D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co., Inc.*, 326 N.C. 133, 142, 388 S.E.2d 557, 563 (1990) (quoting *Woods v. Ins. Co.*, 295 N.C. 500, 505-06, 246 S.E.2d 773, 777 (1978)). Accordingly, B&G's attempts to read in a requirement that mental abuse flow from physical and/or sexual abuse must be rejected.

Indeed, courts defining "mental abuse" have not imposed a prerequisite of physical or <u>verbal</u> abuse, as B&G repeatedly suggests. Rather, courts have defined "mental abuse" broadly, holding that "[a] reasonably prudent insured would discern that mental abuse is <u>mental maltreatment</u>, often resulting in <u>mental or emotional injury</u>." *Heacker*, 676 F.3d at 729 (emphasis added). Owens' actions in this case fit squarely within that definition. The mere fact that physical/verbal and mental abuse coincided in some cases does not impose a *de facto* requirement that mental abuse must flow from physical or verbal abuse. Indeed, the only case B&G cites to that effect, *Scottsdale Insurance Co. v. Education Management Inc.*, was <u>expressly rejected</u> by this Court. *Children's Home Soc. of N.C.*, 2013 WL 3354506, at *9 ("This Court does not find [the *Education Management*] decision persuasive."). B&G's tortured reading of "mental abuse," which apparently requires that physical or verbal interaction take place between
6

the tortfeasor and the victim, produces an absurd result, and would preclude acts that any reasonable person would consider "mental abuse." For example, in *Children's Home Society of North Carolina*, the alleged forms of abuse included forcing the victim (a child) to stay in a small confined area, which "prevented him from being able to see or interact with anyone else," as well as "showing him toys but not allowing him to play with them." *Id.* Such abuse did not require physical or verbal interaction between the victim and the perpetrator, but nonetheless was "mental abuse." Likewise, many examples that an ordinary person would consider "mental abuse" come to mind that do not require sexual, physical, or verbal contact between the abuser and the victim, such as stalking, spreading vicious rumors, flashing, etc. B&G's argument that "mental abuse" is contingent upon physical, sexual, and/or verbal abuse is thus unpersuasive.

Moreover, B&G's apparent position that a temporal break between Owens' conduct and the victims' awareness of the conduct precludes its classification as "mental abuse" has no basis in logic or law. B&G again cites only to *Scottsdale Insurance Co. v. Education Management, Inc.*, in support of its position. No. CIVA 04-1053, 2006 WL 2803052 (E.D. La. Sept. 27, 2006). B&G's reliance on the *Education Management* decision is misplaced for at least two reasons. First, that court did not actually rely or focus on the temporal break between the abusive conduct and the victims' awareness of the abuse, as B&G misleadingly suggests. (Tellingly, in support of its argument that there must not be a temporal break between the abusive conduct and the victim's awareness, B&G cites not to the court's decision in *Education Management*, but rather to a brief submitted by the insured.) The court's analysis in *Education Management* in no way harped on or hinged upon such a temporal break, which indeed is barely even referenced in that decision. Moreover, and more importantly, the logic of *Education Management*, a decision from another jurisdiction, was flatly rejected by this Court in *Children's Home Society of North*

*Carolina.* 2013 WL 3354506, at \*9 ("This court does not find that decision persuasive."). B&G has thus presented no credible evidence that "mental abuse" only exists if the mental or psychological suffering occurs simultaneously with the specific act of abuse.

Accordingly, the SPAE applies to exclude coverage for the allegations in the Crews Lawsuit, which arise out of, and result from, mental abuse. Because the SPAE applies to exclude coverage of all claims asserted in the Crews Lawsuit, there is no coverage under the Policy's Commercial General Liability Coverage Form or Errors & Omissions Coverage Part, and Scottsdale is entitled to summary declaratory judgment, as a matter of law.[2]

## II. The Allegations in the Crews Lawsuit Plainly Implicate the Recording and Distribution of Material or Information in Violation of Law Exclusion

The Policy's Recording and Distribution of Material or Information in Violation of Law Exclusion excludes from coverage under the Commercial General Liability Part any "bodily injury" "arising directly or indirectly out of any action or omission that violates or is alleged to violate … [a]ny federal, state or local statute, ordinance or regulation that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information." (D.E. 10, Ex. A, Form CG 00 68 05 09.) Here, the claims asserted in the Crews Lawsuit arise out of Owens' violation of N.C. Gen. Stat. § 14-202(f), which states: "Any person who, for the purpose of arousing or gratifying the sexual desire of any person, secretly or surreptitiously uses or installs in a room any device that

---

[2] Additionally, as noted in Scottsdale's Memorandum of Law in Support of Its Motion for Summary Judgment, it is Scottsdale's position that no coverage separately arises under the Policy's Sexual and/or Physical Abuse Liability Coverage Form ("SPALCF"), because Owens' actions do not constitute "sexual abuse" and the SPALCF does not otherwise provide coverage for mental abuse. (D.E. 33 at 9-10.) B&G agrees with Scottsdale's position, in this regard, conceding in its memorandum that Owens' actions do not constitute "sexual abuse" as the term is used by the SPALCF. However, to the extent that the Court is inclined to find any coverage for the claims asserted in the Crews Lawsuit, because the SPAE does so plainly apply, Scottsdale believes that the only potential coverage is via the SPALCF (with its special limits of $100,000 each claim and $300,000 aggregate), to the extent that the Court somehow found that the activities of Mr. Owens constituted "sexual abuse" (despite the absence of any physical contact between him and the victims).

can be used to create a photographic image with the intent to capture the image of another without their consent shall be guilty of a Class I felony."

B&G does not dispute that Owens' actions violated § 14-202(f) (and indeed, Owens has already pled guilty to multiple counts of violating this statute). Rather, B&G's argument in this regard is (again) premised on an overly narrow reading of the term "arising out of" that has been repeatedly rejected by this Court and sister courts. Under North Carolina law, <u>all</u> the allegations in the Crews complaint "arise out of" Owens' illegal recordings, which indisputably violated § 14-202(f). Any distinction between Owens' acts and the alleged supervisory negligence is irrelevant pursuant to this Court's precedent. *See Allstate Ins. Co.*, 185 F. Supp. 2d at 613 ("Without the molestation there would be no injury and thus, no basis for the negligence claim…. Whether [the wife's] negligence contributed to the infliction of the injury does not and cannot change the nature of the bodily injury."); *Children's Home Soc. of N.C., Inc.*, 2013 WL 3354506; *see also Erie Ins. Exch.*, 690 F. Supp. 2d at 415; *St. Paul Reinsurance Co., Ltd. v. Riviello*, 296 F. App'x 377, 379 (4th Cir. 2008) (under a policy that excluded coverage for "claims arising out of assault and battery," where "the separate acts of negligence alleged in the underlying lawsuit would not be actionable without the assault and battery because the only injuries suffered [] were the result of the assault and battery," the negligence claims "arose from" the assault and battery and were excluded). Here, the allegations of negligence in the Crews Complaint are inextricably intertwined with Owens' secret peeping in violation of North Carolina statute, and would not exist but for the secret peeping. The Recording and Distribution of Material or Information in Violation of Law Exclusion thus applies to preclude coverage.

B&G's argument alleging that this exclusion renders Coverage B illusory is also unpersuasive and untethered from established case law. Here, the Recording and Distribution of

9

Material or Information in Violation of Law Exclusion was added by endorsement, which commonly limits the standard policy language, and does not render covering provisions of the Policy illusory. *See Harleyville Mut. Ins. Co. v. Reliance Nat. Ins. Co.*, 256 F. Supp. 2d 413, 419 (M.D.N.C. 2002) ("In the event of a conflict with policy language, the language of an endorsement generally prevails."). "An exclusion is said to present an irreconcilable conflict" only when "it purports to 'totally eliminate the coverage defined in a comprehensive statement of coverage.'" *Children's Home Soc. of N.C.*, 2013 WL 3354506, at *6 (quoting *Catawba Valley Mach. Co. v. Aetna Ins. Co.*, 13 N.C. App. 85, 90, 185 S.E.2d 308, 311 (1971)). The mere fact that the Recording and Distribution of Material or Information in Violation of Law Exclusion excludes coverage for allegations that might otherwise fall within Coverage B does not render the Policy illusory. *See Russ v. Causey*, 732 F. Supp. 2d 589, 611-12 (E.D.N.C. 2010) ("Although the exclusion…is indeed broad enough to exclude most torts that would otherwise be covered under the policy, it is not so broad as to be illusory or internally inconsistent.").

Indeed, contrary to B&G's claim, not every invasion of privacy under Coverage B "necessarily violate[s]" N.C. Gen. Stat. § 14-202, which criminalizes a variety of acts constituting "secretly peeping into a room occupied by another person." For example, not every violation of privacy is "secretive," nor does every violation of privacy involve "peeping" (such as an innkeeper entering a tenant's room and rifling through their belongings). Moreover, "personal and advertising injury" under Coverage B is defined in the Policy to include a wide variety of other acts that are not criminalized by § 14-202, such as "false arrest, detention or imprisonment," "malicious prosecution," and slander or libel. This Court has consistently held that exclusions are "a well accepted and effective manner of specifically defining the actual coverage intended." *Children's Home Soc. of N.C., Inc.*, 2013 WL 3354506, at *6 (quoting

10
PD.18305470.3
Case 4:14-cv-00187-D   Document 38   Filed 11/16/15   Page 10 of 19

*Catawba Valley Mach.*, 13 N.C. App. at 90, 185 S.E.2d at 311 (1971)). Exclusion of coverage for the Crews Lawsuit pursuant to the Recording and Distribution of Material or Information in Violation of Law Exclusion does not render Coverage B illusory.

### III. The Claims in the Crews Lawsuit Are Not Covered under the Policy's Errors and Omissions Coverage Part

The claims asserted in the Crews Lawsuit are excluded by the Policy's Errors and Omissions Coverage Part, which excludes coverage for "[i]njury arising out of a dishonest, fraudulent, malicious or criminal act by any insured." (D.E. 10, Ex. A, Form GLS 172s (2-07).) The Policy extends "insured" status to B&G's employees, subject to certain limitations. *Id.* ("Your employees are insureds but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business."). As discussed above, Owens' actions undeniably constitute a criminal act in violation of N.C. Gen. Stat. § 14-202. B&G, however, attempts to argue that the criminal act exclusion does not apply because Owens is not an "insured" under the Policy, and again argues that supervisory negligence claims do not "arise out of" Owens' criminal act.[3] These arguments are untenable, as the Crews Lawsuit clearly falls within the above-referenced exclusion.

The Crews Lawsuit arises out of Owens' criminal act, and is thus precluded from coverage under the Errors and Omissions Coverage Part. B&G's reliance on *Durham City Bd. of Educ. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 109 N.C. App. 152, 158, 426 S.E.2d 451, 454 (1993), allegedly presenting an "identical scenario," is misplaced. In *Durham City*, the complaint alleged that "certain actions of the [School] Board after the rape caused [the victim]

---

[3] B&G also ignores the fact that coverage cannot arise under both the Errors and Omissions Coverage Part and the Commercial General Liability Coverage Part. The Errors and Omissions Coverage Part excludes "[a]ny claims covered under the Commercial General Liability Coverage Part … or any other coverages included in this policy." (D.E. 10, Ex. A, Form GLS 172s (2-07).) Thus, even if B&G were correct that coverage somehow arose under the Policy's Commercial General Liability Coverage Form (or any other policy coverages), no coverage could simultaneously exist under the Errors and Omissions Coverage Part.

11

further harm," and claimed that the Board "failed to reprimand or counsel Walker when they knew Walker was likely to engage in improper sexual conduct with a student under his supervision, failed to properly and timely investigate a sexual incident involving Walker and another thirteen-year-old student, … failed to deal with the incident with Lakisha and Walker in a confidential and professional manner, and failed to establish proper policies and procedures in order to deal with incidents involving sexual conduct between students and teachers." 109 N.C. App. at 158, 426 S.E.2d at 454 (emphasis added). In other words, *Durham* was not a typical negligent supervision case, but rather the underlying lawsuit alleged that the school board's actions independently contributed to or exacerbated the damages. Unlike the situation in *Durham City*, in this case the criminal act of Owens was indeed a "necessary feature" of the allegations against B&G, and the Crews Complaint only makes general allegations regarding a failure of B&G to inspect the premises and discover Owens' clandestine taping. In this regard, *Durham City* is plainly distinguishable from the Crews Lawsuit.[4]

In any event, even in a best-case scenario for B&G Fitness, the factual question of whether Owens was acting within the scope of his employment with B&G is one for the jury, making summary judgment in favor of B&G inappropriate. B&G's blanket statement that North Carolina law "holds that an employee who commits a tort or crime while he working [sic] is outside the scope of his employment," (D.E. 35 at 9) is simply wrong. If this were the case, an

---

[4] Further, other courts, including multiple federal Courts of Appeals, have criticized and distinguished the *Durham City* decision. For example, the United States Court of Appeals for the First Circuit characterized the North Carolina Court of Appeals' analysis in *Durham City* as "brief and conclusory," and found their "perfunctory treatment unpersuasive." *Winnacunnet Co-op. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 84 F.3d 32, 37 n.9 (1st Cir. 1996). Rather, the First Circuit held that there was no coverage for negligent hiring and supervision claims under an Errors and Omissions Coverage Part because the injuries complained of arose out of, and were "inextricably related to," an underlying murder. *Id.*; *see also Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 99 F.3d 695, 708 n.15 (5th Cir. 1996) (expressly disagreeing with the reasoning in *Durham City*, and finding that when a plaintiff's legal claims are "related to and dependent upon excluded conduct, the claims are not covered, even if asserted against an insured who did not himself engage in the prohibited conduct").

employer could never be held vicariously liable for the torts or crimes of employees. *See, e.g. Edwards v. Akion*, 52 N.C. App. 688, 698, 279 S.E.2d 894, 900 (1981), *aff'd*, 284 S.E.2d 518 (N.C. 1981) (noting that "courts should be slow to assume a deviation from the duties of employment" and refusing to hold "as a matter of law, that [the employee] was not acting within the scope of his employment at the time he allegedly assaulted Mrs. Edwards"); *Estate of Redding ex rel. Redding v. Welborn*, 170 N.C. App. 324, 330, 612 S.E.2d 664, 668 (2005) ("When an employee commits a tort while acting within the scope of employment, the tort can be imputed to the employer…."). Indeed, only in the narrowest class of cases, such as a sexual assault by a school employee against a student (as in *Durham City*), have North Carolina courts ever held that an employee's tort or crime is beyond the scope of his or her employment as a matter of law.

Moreover, B&G's position ignores a critical part of the Policy's definition of "insured." Section II(2) of the Policy defines "insured" to include "employees…for acts within the scope of their employment by you <u>or while performing duties related to the conduct of your business</u>." (D.E. 10, Ex. A, Form CG 00 01 12 07) (emphasis added.) Even if B&G's allegations are true that Owens was acting outside the scope of his employment when he filmed the victims, B&G has not disputed the filming occurred "while [Owens was] performing duties related to the conduct of [B&G's] business."

The pervasive inconsistencies in B&G's position must also be noted. Notwithstanding its argument that Owens was not acting within the scope of his employment as a matter of law (D.E. 35 at 9-10), elsewhere in its Memorandum, B&G posits that Owens could have been acting within the scope of employment when he illegally recorded B&G's patrons, and thus that Owens' acts might be imputed to B&G. (D.E. 35 at 14.) B&G's position (at least for this

portion of its argument) that this case presents an extreme example where the scope of employment question should be decided as a matter of law is therefore disingenuous, at best. Additionally, it is striking that despite repeatedly claiming that Owens' actions did not constitute sexual abuse (in an effort to avoid application of the SPAE), B&G takes the position (for purposes of arguing for coverage under the Errors and Omissions Coverage Form) that the instant circumstance "presents an <u>identical scenario</u>" to that in *Durham City*, a case involving sexual assault by a teacher. (*Id.* at 10) (emphasis added.) Simply put, B&G cannot have its cake and eat it too, and the contradictory positions taken in its Memorandum are irreconcilable.

## IV. The Claims in the Crews Lawsuit Are Not Covered Under Coverage B

Coverage B generally provides coverage for "personal and advertising injury," which the Policy defines to include "the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor." (D.E. 10, Form CG 00 01 12 07.) It is important to note at the outset that the only claims for invasion of privacy (as well as for vicarious liability) were contained in the Pool Lawsuit, which settled since the B&G Memorandum was submitted. The remaining Crews Lawsuit asserts a single count of negligence against B&G, and does not claim invasion of privacy, making Coverage B inapplicable. (D.E. 33 at 12.)

To the extent that the sole count for negligence in the Crews Lawsuit is interpreted as a claim for "invasion of privacy", Coverage B of the Policy nevertheless extends coverage only for invasions of privacy "<u>committed by or on behalf of its owner, landlord or lessor</u>." (D.E. 10, Form CG 00 01 12 07) (emphasis added). Scottsdale concedes that other courts have found older versions of Coverage B (which did not include the term "committed") ambiguous, with said courts reasoning that the phrase "by or on behalf of its owner, landlord or lessor" could modify a

14

PD.18305470.3

Case 4:14-cv-00187-D   Document 38   Filed 11/16/15   Page 14 of 19

number of terms within the covering provision.[5]  However, the addition of the phrase "committed by" in the most recent version of the coverage form (at issue here) removes this ambiguity and makes clear that the room must be actually let out <u>and</u> the invasion be committed by the insured in order for coverage for an invasion of a private right of occupancy to apply.  *See Hartford Fire Ins. Co. v. Gandy Dancer, LLC*, 981 F. Supp. 2d 981 (D.N.M. 2013) ("The addition of the term "committed by" in the clause indicates that the term is unambiguous in the manner in which other courts have found similar clauses to be ambiguous.").  Under the allegations of the Crews Lawsuit, to the extent there was an "invasion of privacy", any such invasion was not committed by B&G, but rather by Owens, and thus there simply is no coverage under Coverage B.

It is not entirely clear whether B&G accepts that Coverage B is unambiguous and only provides coverage for an invasion committed by the owner.  On one hand, B&G relies heavily on *American Guarantee and Liability Insurance Co. v. 1906 Co.*, 273 F.3d 605 (5th Cir. 2001) in support of its coverage position, pointing to the similar factual circumstances of the underlying claim and the fact that the Fifth Circuit found the insurer had a duty to defend.  (D.E. 35 at 11-12.)  B&G's reliance on *1906 Co.* is misplaced, however, as it was decided based upon the older version of Coverage B that omitted the critical "committed by" language.

Contrary to B&G's assertion that the absence of the term "committed" was "irrelevant" to the *1906 Co.* court's decision (D.E. 35 at 13), the absence of the term was the <u>crux</u> of the decision.  Like other courts interpreting this older version of Coverage B (without the "committed by" language), the *1906 Co.* court found that the phrase "by or behalf of its owner,

---

[5] *See New Castle Cnty. v. Nat'l Union Fire Ins. Co.*, 174 F.3d 338, 344 (3d Cir. 1999) (predicting that Delaware law would find that the term "by or on behalf of its owner, landlord or lessor" could modify either the terms "wrongful entry" and "invasion," or "occupy," and, is, therefore, ambiguous); *Royal Ins. Co. of Am. v. Kirksville Coll. of Osteopathic*, 191 F.3d 959 (8th Cir. 1999) (same); *Lakeland Vill. Homeowners Ass'n v. Great Am. Ins. Grp.*, 727 F. Supp. 2d 887 (E.D. Cal. 2010) (same).

landlord or lessor" was ambiguous, such that it could mean that the victims were occupying the dressing room simply "in the interests" of its owner. 273 F.3d at 621. Under these circumstances, the court found that there was coverage (for purposes of Coverage B) because of the ambiguity in the older coverage form and the potential multiple interpretations of the phrase "by or on behalf of." *Id.* Unlike the policy at issue in *1906 Co.*, the Policy here does include the critical "committed by" term, which removes any ambiguity from the phrase "by or on behalf of." *Gandy Dancer, LLC*, 981 F. Supp. 2d at 1017. Accordingly, to the extent that it is B&G's position that the holding of *1906 Co.* (i.e., that the covering provision of Coverage B is ambiguous and therefore coverage arises) applies to the instant facts, this argument has no merit.

Notwithstanding its heavy reliance on *1906 Co.* (and its holding that Coverage B is ambiguous), B&G simultaneously argues that there are allegations of an invasion of privacy committed by the owner, positing that the underlying plaintiffs allege that "B&G wrongly invaded another's privacy by negligently allowing an employee to enter into a private room and videotape customers…"[6] (D.E. 35 at 11.) However, there are no allegations that B&G wrongfully invaded anyone's privacy. Rather, the only allegations in the Crews Lawsuit are that B&G was negligent in failing to stop Owens' malfeasance. As discussed in Scottsdale's Motion for Summary Judgment and Memorandum of Law in support of the same, this is not sufficient to implicate Coverage B, which generally requires a claim directly against B&G for "invasion of privacy" based on its own activity invading another's privacy. (D.E. 33 at 11-14.); *see also*

---

[6] B&G also argues that Owens' actions might be imputed to B&G as a matter of vicarious liability. (D.E. 35 at 14.) However, this argument is now moot, given that the only claims for vicarious liability and/or respondeat superior were contained in the Pool Lawsuit. There are no claims for vicarious liability and/or respondeat superior in the Crews Lawsuit (indeed, there are no claims against Mr. Owens whatsoever), and therefore this cannot provide the basis for any coverage under the Policy. *Cameron Hospitality, Inc. v. Cline Design Assocs., PA*, 223 N.C. App. 223, 226, 735 S.E.2d 348, 351 (2012) ("Under a theory of *respondeat superior*, the principal's liability is derivative, arising from the acts of the agent. Accordingly, where the agent has no liability, there is nothing from which to derive the principal's liability under the doctrine.") (internal citations omitted).

*Mountain States Mut. Cas. Co. v. Hauser*, 221 P.3d 56, 62 (Colo. App. 2009) (holding that there was no coverage for alleged false imprisonment, because there was no such direct claim against the insured and no such claim provided against the insured's employee). Claims for negligence (or negligent hiring, negligent supervision, negligent retention) against B&G cannot plausibly be considered an "invasion of privacy," and any argument otherwise is simply an effort to put lipstick on a pig. *See Hanover Am. Ins. Co. v. Balfour*, 594 F. App'x 526 (10th Cir. 2015) (holding that injuries suffered from sexual assault by chiropractor's ex-husband did not arise out of an offense of "humiliation" and therefore could not constitute "personal and advertising injury" under Coverage B, where claims against chiropractor were based in negligence and her purported failure to warn the patient about her husband's propensities and her allowing him access to the building); *State Farm Ins. Co. v. Bruns*, 156 N.H. 708, 942 A.2d 1275 (2008).[7] Accordingly, because there is no direct claim against B&G for an invasion of the private right of occupancy, no coverage under Coverage B can plausibly arise.[8]

## Conclusion

For the reasons discussed above, and in Scottsdale's Memorandum of Law in Support of its Motion for Summary Judgment, Scottsdale respectfully requests that the Court grant summary judgment in its favor, declaring that there is no coverage under the Policy's Sexual and/or Physical Abuse Liability Coverage Form, Commercial General Liability Coverage Form, or

---

[7] B&G's attempt to distinguish *State Farm Ins. Co. v. Bruns*, 942 A.2d 1275 (N.H. 2008), and reliance upon *Western Protectors*, is misplaced. B&G fails to provide any support whatsoever for its allegation that *Western Protectors* is "more similar" to the case at bar. Critically, in *Western Protectors*, the complaint included six separate causes of action, including invasion of privacy, arising out of the alleged "grooming" and sexual abuse of minor children over a number of years. *W. Protectors Ins. Co. v. Shaffer*, 624 F. Supp. 2d 1292, 1296 (W.D. Wash. 2009). The court's finding that the invasion of privacy claims were distinct from the sexual abuse claims (premised on the specific allegations of "grooming", which predecessed any alleged sexual abuse.) The facts here are much closer to *Bruns*, where the alleged "invasion of privacy" was based on the exact same facts as the abuse claims. As in *Bruns*, any (purported) claims for invasion of privacy arise from the exact same conduct (Owens' peeping) and give rise to the exact same harm (mental anguish) as the alleged mental abuse.

[8] In any event, any coverage nominally arising under Coverage B is further excluded by the SPAE, as discussed in detail above.

Errors and Omissions Coverage Part with respect to the Lawsuit, and that the allegations of the Lawsuit are excluded from coverage under the Policy's Sexual and/or Physical Abuse Exclusion and Recording and Distribution of Material or Information in Violation of Law Exclusion. Likewise, Scottsdale respectfully requests that the Court deny B&G's Cross Motion for Summary Judgment, as any coverage arising under the Policy is precluded by the same exclusions.

Respectfully submitted this the 16th day of November 2015.

PHELPS DUNBAR LLP

/s/ Robert M. Kennedy, Jr.
Robert M. Kennedy, Jr., NC Bar #36865
robert.kennedy@phelps.com
GlenLake One
4140 ParkLake Avenue, Suite 100
Raleigh, North Carolina 27612-3723
Telephone: 919-789-5300
Facsimile: 919-789-5301

*Attorney for Plaintiff Scottsdale Insurance Company*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the document to which this Certificate is affixed was served upon the parties to this action by means of the Electronic Filing System of the United States District Court for the Eastern District of North Carolina on November 16, 2015, which will serve copies of the foregoing on the following registered users:

William Joseph Austin, Jr.
Eric Remington
Ward and Smith, P.A.
Post Office Box 33009
Raleigh, North Carolina 27636

*Attorneys for Defendant B&G Fitness Center, Inc.*

        PHELPS DUNBAR LLP

        /s/ Robert M. Kennedy, Jr
        Robert M. Kennedy, Jr., NC Bar #36865
        robert.kennedy@phelps.com
        GlenLake One
        4140 ParkLake Avenue
        Suite 100
        Raleigh, North Carolina 27612-3723
        Telephone:    919-789-5300
        Facsimile:    919-789-5301

        *Attorney for Plaintiff Scottsdale Insurance Company*