IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

CIVIL ACTION FILE NO. 4:14-CV-187-F

| | | |
|---|---|---|
| SCOTTSDALE INSURANCE COMPANY, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | REPLY IN SUPPORT OF |
| | ) | DEFENDANT'S MOTION FOR |
| B&G FITNESS CENTER, INC. and | ) | SUMMARY JUDGMENT |
| THOMAS G. OWENS, | ) | |
| Defendants | ) | |

Defendant B&G Fitness Center, Inc. ("B&G"), by and through its undersigned counsel, hereby submits its Reply in Support of its Motion for Summary Judgment.

In its Opposition, Plaintiff Scottsdale Insurance Company ("Scottsdale") invites the Court to both re-write the Policy language and be the first to hold that secret videotaping discovered after the fact constitutes "mental abuse." Scottsdale's argument requires the Court to deviate from the well-established law requiring strict construction of exclusions in insurance contracts. See Durham City Bd. of Educ. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 109 N.C.App. 152, 160, 426 S.E.2d 451, 455 (1993).

For the reasons set forth below, B&G is entitled to judgment as a matter of law that coverage for the Crews Lawsuit is warranted under the Errors and Omissions Coverage Part, or, alternatively, that coverage is warranted under Coverages A and B of the Commercial General Liability Part of the Policy.[1]

### I. B&G is entitled to Coverage under the Errors and Omissions Coverage Part of the Policy because Durham City controls.

In interpreting the contract language in this case, the Court must apply North Carolina law.[2] The decision of North Carolina Court of Appeals in Durham City, 109 N.C.App. at 161, 426 S.E.2d at

---

[1] B&G acknowledges that in light of the settlement of the Pool lawsuit, coverage for the Crews Lawsuit is the remaining dispute before the Court.

[2] North Carolina law governs this contract dispute. In a diversity case like this one, the district court applies the conflict of laws rules of the forum state. Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 497 (1941). N.C. Gen. Stat. § 58-3-1 states that any policy insuring interests in North Carolina "shall be deemed" to have been made in and subject to the laws of North Carolina. Id.

456 involves similar claims against an employer and a nearly identical errors and omissions policy. Durham City makes clear that the claims against B&G are claims for "negligent act[s], error[s] or omission[s]" that are covered under the Errors and Omissions Part. Dkt. # 10-1, Form GLS-172s (2-07) page 7 of 8. Scottsdale's arguments ignore the language and substance of the Crews Lawsuit, the plain terms of the Policy, and binding precedent.

Scottsdale's efforts to distinguish Durham City are unavailing as the similarities between it and the instant case cannot be discounted. 109 N.C.App at 160, 426 S.E.2d at 455-56; Dkt. # 35 at 9-10. Here, the Crews Complaint lodges claims of negligence against B&G for its failure to inspect the premises, its hiring of Owens, and its failure to protect the plaintiffs from invasions of privacy. Dkt. # 11-1 at ¶¶ XVI, XIX, XXI, XXII. These allegations are similar to the ones lodged against the school board in Durham City - failure to investigate, failure to establish procedures and policies to deal with incidents, failure to exercise care for the health and safety of the victim, and negligent hiring. 109 N.C.App at 158, 426 S.E.2d at 454. Scottsdale tries to argue that Durham City is an atypical negligent supervision case, however the similarities between the negligence allegations in that case and the negligence allegations in the Crews Lawsuit belie this argument.

Not only is Durham City on point factually because it involves an employer-employee relationship and a virtually identical errors and omissions policy, but it is controlling legal precedent that has been followed by multiple courts in North Carolina and other jurisdictions. See Montgomery Mut. Ins. Co. v. Citadel Management, LLC, 2013 WL 6147778 at *5 (W.D.N.C. Nov. 22, 2013) ("[t]he existence of other claims alleging fraudulent conduct does not negate the other allegations of negligence."); Bd. of Public Educ. of Sch. District of Pittsburgh v. Nat'l Union Fire Ins. Co. of Pittsburgh, 709 A.2d 910, 917 (Penn. 1998) (following Durham City and noting that "[t]o deny the School District a defense against claims that do not allege excluded conduct by the District would be intolerable."); Watkins Glen Central Sch. District v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A., 286 A.D.2d 48, 53-54 (N.Y. 2001) (noting that coverage for negligence claims against the school board was "the very object of

the errors and omissions coverage.").³ These cases, which involve errors and omissions policies like the one at issue and follow Durham City, discredit Scottsdale's suggestion that Durham City is an outlier.⁴

In addition, Scottsdale's attempts to classify Owens as an "insured" are contrary to established North Carolina law. In North Carolina, there is no question that Owens' conduct is "beyond the course and scope" of his employment, and therefore he cannot be considered an "insured" under the Policy. See Durham City, 109 N.C.App at 157-58, 426 S.E.2d at 454 (sexual assault not in the scope of employment); Interlocal Risk Fin. Fund of N.C. v. Ryals, 186 N.C.App. 679, 652 S.E.2d 72, 2007 WL 3256949 at *3 (Nov. 6, 2007) (same); Young v. Great Am. Ins. Co. of N.Y., 162 N.C.App. 87, 92, 590 S.E.2d 4, 7 (2004) (J. Hunter, dissenting) decision reversed by 359 N.C. 58 (adopting J. Hunter's dissent). North Carolina law also makes clear that this question is one of law for the Court, not a fact question for the jury. See Medlin v. Bass, 327 N.C. 587, 594, 398 S.E.2d 460, 464 (1990).

Not only was Owens' conduct outside of the scope of his employment, but it cannot be considered a "duty" related to the conduct of B&G's lawful business as Scottsdale suggests. Young, 359 N.C. 58, 602 S.E.2d 673, 674 (2004) (sexual assault at issue in that case was "not a law enforcement duty.").⁵ In Medlin, while a principal who sexually assaulted a student may have been exercising authority conferred upon him by the school in summoning a student to his office, he was "advancing a completely personal objective[]" when he sexually assaulted the student. 327 N.C. at 594, 398 S.E.2d at 464. Under this rationale, even if Owens entered B&G's dressing rooms pursuant to authority conferred on him by his employment, he was advancing a completely personal objective when he went a step

---

³ The Fourth Circuit distinguished Watkins Glen, but only in a case with policy language not present here that excluded damages arising "indirectly" from a criminal act. See Gulf Underwriters Ins. Co. v. KSI Servs., Inc., 233 F. App'x 239, 242 (4th Cir. 2007) (unpublished).
⁴ Allstate Ins. Co. v. Bates, 185 F.Supp.2d 607 (E.D.N.C. Feb. 3, 2000) is factually and legally distinguishable. It did not involve an employer-employee relationship or an interpretation of an errors and omissions policy.
⁵ The cases that Scottsdale cites to argue that sometimes torts can be committed within the scope of employment do not change the analysis here. Edwards v Akion, 52 N.C.App. 688, 698, 279 S.E.2d 894, 900 (1981) predates Medlin, Durham City, and their progeny and is simply inconsistent with the law established by those cases. Redding ex rel. Redding v. Welborn, 170 N.C.App. 324, 330, 612 S.E.2d 664, 668 (2005) considered independent contractors acting *outside* of the scope of their employment duties. Scottsdale Opp'n, Dkt. # 38 at 10. Regardless, neither of these cases demonstrates or even creates a question of fact as to whether or not Owens was acting within the scope of his employment when he surreptitiously installed cameras in the dressing rooms to watch women undress.

further and installed recording devices to tape women undressing. It is this personal act, outside of the scope of his employment and employment-related duties, that prevents him from being classified as an insured as a matter of law and prevents application of the exclusion Scottsdale cites.

Though Scottsdale attempts to discount the precedential effect of Durham City, the case and those that cite it make clear that B&G is entitled to coverage under the Errors and Omissions Coverage Part of the Policy. The negligence claims against B&G are covered under this section and Owens' conduct does not change the analysis because under North Carolina law, he is not an "insured." B&G is entitled to judgment as a matter of law as to this issue.[6]

**II. Alternatively, B&G is Entitled to Coverage Under Coverages A and B.**

If the Court determines that coverage under the Errors and Omissions Part is not warranted, then Scottsdale is entitled to coverage under Coverages A and B of the Commercial General Liability Part of the Policy.[7] As for Coverage A, Scottsdale offers no argument that coverage is not warranted under this Part for "bodily injury." For the reasons stated infra at 6-8, the Sexual and/or Physical Abuse Exclusion ("SPAE") does not operate to exclude coverage under this Part. Dkt. # 35 at 15-16.

As for Coverage B, notwithstanding the fact that the Crews Lawsuit makes *specific allegations* against B&G for failure to protect the victims' privacy, Scottsdale erroneously argues that coverage for personal and advertising injury for violation of private occupancy of a room does not apply because there is no specific allegation that B&G entered into a private room and installed a videotape to record its patrons. No such allegations are remotely necessary to bring the allegations in the Crews Lawsuit within the purview of Coverage B under the rules for interpreting insurance contracts in favor of the insured.

---

[6] As set forth infra at 6-8, the SPAE does not affect the coverage provided in the Errors and Omissions Part because the SPAE is inapplicable. See also Dkt. # 35 at 8-10.

[7] As set forth herein and in B&G's Memorandum, Dkt. # 35, it is B&G's position that coverage is warranted under the Errors and Omissions Policy. B&G acknowledges the Policy language in this part preventing "double recovery" under both the Errors and Omissions Part and Coverages A and B. See Dkt. # 10-1, Form GLS 172s (2-07). B&G's arguments for coverage under Coverage A and B of the Policy are pled in the alternative to its arguments for coverage under the Errors and Omissions Part. See Fed. R. Civ. P. 8(d). Should the Court find that coverage is not warranted under the Errors and Omissions Part, then coverage is warranted under Coverages A and B of the Commercial General Liability Coverage Part.

The Crews Lawsuit specifically asserts that B&G failed to protect the plaintiffs' privacy. Dkt. # 11-1 at ¶¶ XXI, XXII. From the outset, Scottsdale has tried to avoid these allegations to argue that the Crews Lawsuit does not involve invasion of privacy, but the language of the allegations cannot be ignored. Not only is the Court required to adopt the allegations in the Crews Complaint as true for purposes of determining coverage, Montgomery Mut. Ins., 2013 WL 6147778 at *3 (citation omitted), but the Court is also required to consider whether there is a "potential" or a "mere possibility" that those allegations are covered by the Policy. Id.; see also Crandell v. Am. Home Assurance Co., 183 N.C.App. 437, 440, 644 S.E.2d 604, 606 (2007); Dkt. # 35 at 14. Under these rules of interpretation, the allegations in the Crews Lawsuit show more than a possibility that B&G will be found to have invaded the plaintiffs' privacy, and coverage is warranted.

Additionally, Scottsdale does not address the allegations in the Crews Lawsuit that specifically allege that B&G owned the fitness center where the videotaping occurred, and as the owner and operator, the Crews plaintiffs allege B&G is responsible for their injuries. Dkt. # 35 at 13. Such allegations raise the potential that the invasions of privacy alleged in the Crews Lawsuit will be considered by a jury to be the responsibility of B&G, potentially bringing the allegations within the scope of the "committed by" language that Scottsdale discusses at length. Scottsdale Opp'n, Dkt. # 38 at 14-17. Even though the Crews Plaintiffs have couched these allegations in the context of a negligence claim, Coverage B contains no exclusion for negligence claims based on an invasion of privacy. The inquiry is whether the allegations raise the possibility that coverage is warranted. Crandell, 183 N.C.App. at 440, 644 S.E.2d at 606. Not only do the allegations raise a possibility for coverage under Coverage B, but a reasonable insured reading the Policy language in this Part would understand that coverage was provided for allegations lodged against it for an invasion of privacy.

The decision in American Guarantee and Liability Insurance Co. v. 1906 Co., 273 F.3d 605, 607 (5th Cir. 2001) remains persuasive authority regardless of the absence of the word "committed" from the policy in that case. In particular, the Fifth Circuit's extensive analysis of the secret videotaping and how such conduct constituted an "invasion of privacy" illustrates how such conduct is properly

5

considered secret peeping, or an invasion of privacy.[8]  Dkt. # 35 at 12-13.  This reasoning has been followed by other courts in cases like the present that involve secret peeping or videotaping.  See Western Protectors Ins. Co. v. Schaffer, 624 F.Supp.2d 1292, 1302 (W.D. Wash. 2009).  Scottsdale continues to rely on State Farm Ins. Co. v. Bruns, 942 A.2d 1275 (N.H. 2008) to no avail where the court in Bruns limited its own holding to the specific facts of that case (which involved sexual assault), and acknowledged that since the claims for invasion of privacy were "*inextricably intertwined with and dependent upon the uncovered sexual assault claims*," that they were not covered.  Id. at 1283 (emphasis added).  Here, it is undisputed that there are *no claims for sexual assault*, and there is no way that the single count of negligence related to B&G's failure to protect the victims' privacy could be "inextricably intertwined" with an abuse claim.

### III. Scottsdale Has Not Established that Owens' Conduct Constitutes "Mental Abuse" and therefore the SPAE is inapplicable.

Despite devoting the majority of both of its memoranda arguing for the applicability of the SPAE, Scottsdale fails to show that Owens' conduct constitutes "mental abuse" or that this Court's decision in Scottsdale Ins. Co. v. Children's Home Soc'y of N.C., Inc., 5:12-CV-81-FL, 2013 WL 3354506 (E.D.N.C. July 3, 2013), aff'd 581 F. App'x 290 (4th Cir. Aug. 20, 2014) (unpublished per curiam) is applicable to the present case.  Scottsdale's repeated comparison of Children's Home with the present case ignore the glaring factual and procedural dissimilarities between the two and directly conflict with the rules of strict construction of exclusions in insurance contracts.  See Durham City, 109 N.C.App. at 156, 425 S.E.2d at 453.

Contrary to Scottsdale's arguments, Durham City makes clear that the operative conduct that the Crews Lawsuit allegations "arise out of" is the negligence of B&G and therefore the SPAE does not apply.  109 N.C.App. at 160, 426 S.E.2d at 456; Dkt. # 35 at 16-18.  Though Children's Home followed

---

[8] Invasions of privacy and mental abuse are not one and the same.  See Scottsdale Opp'n, Dkt. # 38 at 5.  While other invasions of privacy (such as false imprisonment) may also be considered mental abuse, the specific conduct at issue here and in American Guarantee, secret videotaping or peeping, has not been considered mental abuse by any court of which B&G is aware.  Instead, the conduct is considered an invasion of privacy.

6
Case 4:14-cv-00187-D   Document 39   Filed 11/30/15   Page 6 of 11

the reasoning of Allstate with regard to claims "arising out of" sexual and physical abuse, that case is distinguishable in that it was not an employer-employee case involving coverage under an errors and omissions policy like both the present case and Durham City. Under the reasoning of Durham City, the allegations in the Crews Lawsuit arise out of B&G's negligence and therefore the SPAE is inapplicable. 109 N.C.App. at 160, 426 S.E.2d at 456; Dkt. # 35 at 16-18.

Notwithstanding the "arising out of" language, Scottsdale's attempt to broaden the definition of "mental abuse" to categorize an invasion of one's privacy in a room as mental abuse is little more than an attempt to re-write the language of the Policy exclusion to disfavor coverage. Scottsdale's efforts to stretch the definition of "mental abuse" become particularly apparent when it compares the facts of Children's Home to Owens' conduct in the present case. See Dkt. # 38 at 7. Scottsdale argues that the foster parents' abuse in Children's Home - forcing the victim to remain in a confined area, preventing the child from interacting with others, and taunting the child with toys – all direct, physical, or verbal acts that were coupled with extreme physical abuse,[9] are comparable to Owens' secret videotaping (no direct contact and no accompanying physical and/or verbal abuse) that was not discovered by the victims until well after it occurred. This comparison is simply not credible and only highlights the differences between the underlying allegations in Children's Home and the present case.

Scottsdale cites *no case* in which the invasion of privacy at issue here – secret videotaping discovered after the fact – has been considered "mental abuse." While Scottsdale cites some cases where other invasions of privacy were considered mental abuse, these cases are unavailing because neither involved the invasion of privacy of secret peeping or videotaping and the cases involved accompanying verbal written abuse and/or physical abuse not present here. See Heacker v. Safeco Ins. Co. of Am., 676 F.3d 724, 726 (8th Cir. 2012) (verbal and written abuse); Miller v. McClure, 742 A.2d 564, 566-67 (N.J.

---

[9] The other abusive acts that accompanied the verbal and physical abuse described above are described in detail in B&G's Memorandum in Support. Dkt. # 35 at 22-23. They include: beating, kicking, hitting, and forcing the minor victim to eat his own feces. Id.; Children's Home, 2013 WL 3354506 at *1-2.

7
Case 4:14-cv-00187-D   Document 39   Filed 11/30/15   Page 7 of 11

Super. Ct. 1998) (verbal abuse, offensive touching). These cases as well as the others that Scottsdale relies upon confirm that mental abuse requires some form of direct verbal or emotional abuse. These requirements are not just "prerequisites" as Scottsdale describes, Opp'n, Dkt. # 38 at 6, they are literally the *definition* of mental abuse. See Dkt. # 35 at 21 (citing the definition of "mental abuse" as referencing "emotional abuse," which is defined as "*[p]hysical or verbal abuse* that causes or could cause serious emotional injury.") (emphasis added).[10]

In addition, the contemporaneity of the abusive acts in the cases Scottsdale cites with the suffering of the victims only highlights the connection between the abuse – be it physical, verbal, sexual, or even written – and the injury. Scottsdale suggests that this temporal connection is illogical, Opp'n, Dkt. #38 at 7, though it is present in every case that Scottsdale cites involving a finding of mental abuse. In fact, in the cases that Scottsdale cites, the abuse was suffered by the victims at the time it was inflicted. See Heacker, 676 F.3d at 726 (verbal abuse and written harassment); McClure, 742 A.2d at 566-67 (abusive touching, verbal abuse); Children's Home, 2013 WL 3354506 at *1-2 (extreme physical abuse, verbal abuse, psychological torture). This connection is virtually an element of and requirement for abuse cases. None of the cases Scottsdale cites for mental abuse involve an act discovered long after it occurred that was unknown to the victims at the time. Insurance cases addressing this type of scenario do not involve mental abuse, but rather an assessment of coverage for an invasion of privacy. Am. Guarantee, 273 F.3d at 618-19; Lineberry, 885 F.Supp. at 1096, 1099-1100. See supra at 5-6.

**IV. The Recording and Distribution of Material or Information Exclusion ("Recording Exclusion") is Inapplicable and Renders the Coverage Under Coverage B for "Personal and Advertising Injury" Illusory.**

Scottsdale's arguments for application of the Recording Exclusion to the coverage provided under Coverages A and B[11] are again premised on the erroneous argument that allegations of B&G's negligence cannot be separated from Owens' conduct. Scottsdale Mem., Dkt. # 38 at 8-9. For the reasons

---

[10] The language in the SPAE in this case that excludes coverage for "'sexual and/or physical abuse' caused by negligent employment, investigation, supervision . . . or retention" is inapposite because there is no sexual and/or physical abuse at issue in this case. Dkt. # 35 at 18-19.
[11] As noted in B&G's Memorandum in Support, the Recording Exclusion does not apply to the coverage afforded under the Errors and Omissions Part. Dkt. # 35 at 6.

previously stated, the Crews Lawsuit is based on B&G's *negligence*, not Owens' criminal activity, and therefore the underlying suit does not arise out of a violation of a recording statute. Dkt. # 35 at 16-17.

Notwithstanding the foregoing, the application of the Recording Exclusion renders the Coverage in Coverage B for "personal and advertising injury" for the "invasion of the right of private occupancy of a room" illusory, and is invalid. Dkt. # 35 at 27-29. None of Scottsdale's arguments to the contrary presents an alternative analysis. In fact, the examples Scottsdale offers in its Opposition help illustrate just how illusory the coverage is due to the Recording Exclusion.

While Coverage B covers violation of a person's "right of private occupancy of a room, dwelling or premises that a person occupies," coverage is simultaneously *excluded* under the Recording Exclusion for any action or omission that violates or is alleged to violate any statute that "addresses, prohibits, or limits the . . . collecting . . . of material or information." Dkt. # 10-1, Form CG 00 68 05 09. As set forth in B&G's Memorandum, this exclusion renders coverage illusory because based on the broad sweep of N.C. Gen. Stat. § 14-202, *any* invasion of private occupancy of a room is excluded. Dkt. # 35 at 27-29.

Scottsdale suggests that because other personal and advertising injuries such as malicious prosecution, slander, or libel, may not involve secret peeping, coverage is not illusory. This observation is both self-evident and irrelevant to the analysis since the question is whether the coverage *explicitly* provided for in Coverage B for *invasion of the private occupancy of a room* (not coverage for malicious prosecution, slander, or libel) is rendered illusory by the Recording Exclusion.[12] The inquiry is whether a reasonable insured, reading subsection (b) of the definition of "Personal and advertising injury" in Form CG 00 01 12 07 (page 14 of 16) of Coverage B would assume that coverage was provided for an invasion of a person's private right of occupancy in a room. A reasonable insured would so assume.

---

[12] Scottsdale's argument against illusory coverage attempts to equate "invasions of privacy" with "personal and advertising injury," when in fact invasions of privacy are actually a separate subset of injuries covered under the personal and advertising injury coverage. See Dkt. # 10-1, Form CG 00 68 05 09. This distinction is consistent with North Carolina law, which recognizes four specific types of invasion of privacy, and not all of the injuries covered under personal and advertising injury are considered invasions of privacy. See Tillet v. Onslow Mem. Hospitals, Inc., 215 N.C.App. 382, 384, 715 S.E.2d 538, 540 (2011).

Scottsdale's example of an "innkeeper entering a tenant's room and rifling through their belongings," Dkt. # 38 at 10, actually makes the illusory coverage point perfectly. This conduct would violate N.C. Gen. Stat. § 14-202(a1), which makes it a Class 1 misdemeanor to, among other things, secretly or surreptitiously peep underneath *or through* a person's clothing for the purpose of seeing that person's undergarments or body without their consent. See id. Thus, the exclusion eliminates the coverage defined in Coverage B and is illusory.[13] The Recording Exclusion eradicates coverage that a reasonable insured would assume was covered under Coverage B, and is therefore invalid.

## CONCLUSION

For the foregoing reasons, B&G respectfully requests that the Court grant its Motion for Summary Judgment, Dkt. # 34, and deny Scottsdale's Motion for Summary Judgment.

Respectfully submitted, this the 30th day of November, 2015.

> */s/ Eric J. Remington*
> Eric J. Remington
> N.C. State Bar I.D. No.: 026297
> email: ejr@wardandsmith.com
> Caroline B. McLean
> N.C. State Bar I.D. No.: 041094
> email: cbmclean@wardandsmith.com
> For the firm of
> Ward and Smith, P.A.
> Post Office Box 867
> New Bern, NC 28563-0867
> Telephone: 252.672.5400
> Facsimile: 252.672.547777
> Attorneys for Defendant B&G Fitness Center, Inc.

---

[13] The cases that Scottsdale cites in this section of its memorandum do more to hurt Scottsdale's argument than support it. In Harleysville Mut. Ins. v. Reliance Nat. Ins. Co., 256 F.Supp.2d 413, 419 (M.D.N.C. June 26, 2002) the court *did not apply* the restrictive endorsement language and held that coverage was warranted.[13] In Russ v. Causey, the language in the exclusion explicitly showed the parties' intention to exclude claims relating to governmental immunity. 732 F.Supp.2d 589, 611-12 (E.D.N.C. Aug. 5, 2010). Here, there is no such specific language evidencing the parties' intention. Instead, coverage is explicitly provided in one part and completely excluded by another.

<u>CERTIFICATE OF SERVICE</u>

        I hereby certify that on November 30, 2015, I electronically filed **REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Robert M. Kennedy, Jr., Esq., and I hereby certify that I have mailed the document to the following non CM/ECF participants:

    Mr. Thomas G. Owens
    Inmate No. 1425131
    Pender Correctional Institution
    Box 1058
    Burgaw, NC  28425

                */s/ Eric J. Remington*
                Eric J. Remington
                N.C. State Bar I.D. No.:  026297
                email:  ejr@wardandsmith.com
                Caroline B. McLean
                N.C. State Bar I.D. No.:  041094
                email:  cbmclean@wardandsmith.com
                For the firm of
                Ward and Smith, P.A.
                Post Office Box 867
                New Bern, NC  28563-0867
                Telephone:  252.672.5400
                Facsimile:  252.672.547777
                Attorneys for Defendant B&G Fitness Center, Inc.

141131-00001
ND: 4848-2878-8011, v. 2